**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HFA SPECIALTY ACQUISITIONS LLC, *et al.*, | |
| Plaintiffs, | Civil Action No. 24-1891 (BAH) |
| v. | Judge Beryl A. Howell |
| NEXGEN FLIGHT SOLUTIONS, LLC, *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION**

Plaintiffs HFA Specialty Acquisitions LLC and Michael P. Halperin own an aircraft, for which they entered into an agreement with defendants NexGen Flight Solutions, LLC and Andrew C. Bradley to provide aircraft management and pilot services. First Am. Compl. ("FAC") ¶ 20, ECF No. 14. Following a dispute regarding payments for services, defendants filed, on May 15, 2024, a possessory lien, under the Maryland Garageman's Lien Statute, Md. Code Ann., Com. Law § 16-201 *et seq.*, on the aircraft, FAC ¶ 44, and about one month later, a demand for arbitration on plaintiffs, pursuant to the agreement's terms requiring arbitration to resolve certain disputes, *id.* ¶ 51. In response to defendants' demand for arbitration, plaintiffs filed the instant diversity action alleging replevin and breach of contract, *id.* ¶¶ 60-78, and also moved to stay the arbitration initiated by defendants, pending the outcome of this litigation, Pls.' Mot. to Stay Arb. ("Pls.' Stay Mot.") at 1, ECF No. 3. Defendants have consistently maintained that the dispute must be arbitrated, *see, e.g.,* Defs.' Opp'n Pls.' Stay Mot. ("Defs.' Opp'n") at 4-8, ECF No. 9, Defs.' Mot. to Dismiss or in the Alternative Stay the Litigation ("Defs.' MTD") at

1

1, ECF No. 10, and seek a stay of this litigation pending outcome of the arbitration, *see* Defs.' Mot. to Stay. Litig. ("Defs.' Stay Mot.") at 1, ECF No. 18.

For the following reasons, defendants' motion to stay this litigation is granted and plaintiffs' motion to stay arbitration is denied.

**I.   BACKGROUND**

   **A.   Factual Background**

Plaintiffs, who own a Dassault Aviation model Falcon 50EX aircraft, FAC ¶ 13, entered into an Aircraft Management Agreement ("Agreement") with defendants, who operate a full-service aviation company that provides owners of private jet aircraft "sales management, charter and everything in between," including aircraft maintenance, *id.* ¶¶ 16, 20.  As relevant here, the Agreement contains the following provision:

> Except as for injunctive relief which is expressly reserved in the applicable State or Federal Court for Washington, D.C., any controversy, or dispute arising out of this Agreement, the interpretation of any of the provisions hereof, or the action or inaction of a party hereunder shall be submitted to a confidential arbitration in Washington, D.C. before a retired District Court or Court of Appeal judge selected by the JAMS. ("JAMS") who shall administer the controversy or dispute. If the parties cannot agree to an arbitrator, JAMS shall be empowered to make the selection. The arbitration shall be held before a single arbitrator and shall be binding with no right of appeal. The arbitration shall be conducted pursuant to the JAMS Standard Arbitration Rules.

*Id.*, Ex. 1 ("Agreement") at § 11.7, ECF No. 14-1.  On May 15, 2024, defendants, believing that plaintiffs failed to pay sums due to them under the Agreement, *see* Defs.' Opp'n at 2, recorded a lien under Maryland law on plaintiffs' aircraft and filed a demand for arbitration on June 20, 2024, *see* FAC ¶¶ 44, 51.

   **B.   Procedural History**

A week after defendants demanded arbitration, plaintiffs filed the instant action, on June 28, 2024, alleging that defendants improperly asserted a lien on the aircraft and breached various provisions of the contract, FAC ¶¶ 60-78, and simultaneously moved to stay the arbitration

2

pending resolution of this litigation, *see* Pls.' Stay Mot. at 1.  Defendants oppose a stay of arbitration, highlighting that the Agreement mandates arbitration to resolve their dispute and vigorously denying plaintiffs' allegation, which is put forward in the plaintiffs' motion for a stay of arbitration, *see* Pls.' Mem. Supp. Stay Mot. ("Pls.' Mem.") at 7-9, ECF No. 3-1, that they waived their right to seek arbitration.  Defs.' Opp'n at 4-8.  Defendants filed their opposition to plaintiffs' motion before moving to dismiss or stay the litigation pending arbitration "as their response to the Motion to Stay [was] due first."  Defs.' Opp'n at 2 n.1.

Consistent with their position that arbitration is required, defendants subsequently, on July 19, 2024, moved to dismiss or, in the alternative, stay this litigation.  *See* Defs.' MTD.  Due to plaintiffs filing of the Amended Complaint, however, *see* FAC, defendants' motion to dismiss was denied as moot, *see* Min. Order (Aug. 9, 2024).  Soon thereafter, defendants filed their pending "motion to stay litigation until such time as the arbitration between the parties is concluded."  Defs.' Stay Mot. at 1.  After both motions were fully briefed, the parties were directed to submit supplemental briefing to address "whether the parties' arbitration agreement delegates gateway questions of arbitrability to an arbitrator," as the submitted briefing did not "cite[] let alone distinguish[]" applicable and relevant case law.  Min. Order. (Oct. 10, 2024).  All issues are now ripe for resolution.  *See* Defs.' Supplemental Br. ("Defs.' Suppl."), ECF No. 26; Pls.' Supplemental Br. ("Pls.' Suppl."), ECF No. 27.

## II.    LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, reflects "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  "[A]rbitration is a matter of contract," and the FAA "places arbitration agreements on an

equal footing with other contracts and requires courts to enforce them according to their terms." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67-68 (2010) (internal citation omitted). The Supreme Court has made clear that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25; *see also Khan v. Parsons Glob. Servs., Ltd.*, 521 F.3d 421, 424 (D.C. Cir. 2008) ("The Supreme Court has held that 'questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration . . . whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" (alteration in original) (quoting *Moses H. Cone*, 460 U.S. at 24-25)).

In addition to agreeing to arbitration as a method for resolving disputes, "parties may agree to have an arbitrator decide . . . gateway questions of arbitrability, such as whether the parties['] . . . agreement covers a particular controversy." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67-68 (2019) (citation and internal quotation marks omitted). Any such provision is "simply an additional, antecedent agreement" about who, an arbitrator or a court, should decide gateway questions of arbitrability. *Rent-A-Center*, 561 U.S. at 70. "Such threshold arbitrability questions are generally presumed to be for a court to decide," *Commc'ns Workers of Am. v. AT&T Inc.*, 6 F.4th 1344, 1347 (D.C. Cir. 2021) (citing *BG Grp. PLC v. Republic of Argentina*, 572 U.S. 25, 34 (2014)), but "parties may delegate [them] to the arbitrator" if their "agreement does so by 'clear and unmistakable evidence,'" *Henry Schein*, 586 U.S. at 69 (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

The FAA's Section 4 requires district courts to compel arbitration of arbitrable claims when a party to the arbitration agreement so requests. The Supreme Court, in relying on this FAA provision to hold that an arbitration agreement compelled arbitration of pendant state

4

claims, has found that "[b]y its terms, the Act leaves no place for the exercise of discretion by the district court, but instead mandates that the district court *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original) (citing 9 U.S.C. §§ 3-4). [1]

In evaluating whether the parties had an agreement to arbitrate, courts rely on the standard for summary judgment, under Federal Rule of Civil Procedure 56, "as if it were a request for 'summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate.'" *Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc.*, 531 F.3d 863, 865 (D.C. Cir. 2008) (citation omitted). While the FAA's Section 4 does not contemplate motions to stay arbitration proceedings, the analysis of such a motion is essentially the same as analyzing a motion to compel arbitration because the argument that "no agreement to arbitrate was entered . . . effectively raises the issue whether there was a meeting of the minds on the agreement to arbitrate." *Booker v. Robert Half Int'l, Inc.*, 315 F. Supp. 2d 94, 99 (D.D.C. 2004), *aff'd*, 413 F.3d 77 (D.C. Cir. 2005). Thus, "the summary judgment standard is appropriate in cases where the District Court is required to determine arbitrability, regardless of whether the relief sought is an order to compel arbitration or to prevent arbitration." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003); *see e.g.*, *W&T Travel Servs., LLC v. Priority One Servs., Inc.*, 69 F. Supp. 3d 158, 164 (D.D.C. 2014) (evaluating motion to compel arbitration and motion to stay arbitration under Federal Rule of Civil Procedure 56's summary judgment standard); *Tower Ins. Co. of N.Y. v. Davis/Gilford*, 967 F. Supp. 2d 72, 76 (D.D.C. 2013) (analyzing cross motions

---

[1] While defendants' motion is captioned as seeking a stay of litigation, courts have treated similar motions as asserted to enforce FAA's Section 4 "[b]ecause strict nomenclature regarding how a motion is titled is not required." *Hughes v. CACI, Inc.*, 384 F. Supp. 2d 89, 93 (D.D.C. 2005).

5

that would determine whether plaintiff had to participate in arbitration under Federal Rule of Civil Procedure 56's summary judgment standard).

The summary judgment standard set out in Federal Rule of Civil Procedure 56 entitles "[a] party . . . to summary judgment only if there is no genuine issue of material fact and judgment in the movant's favor is proper as a matter of law." *Soundboard Ass'n v. FTC*, 888 F.3d 1261, 1267 (D.C. Cir. 2018) (citation omitted); *see* FED. R. CIV. P. 56(a). "A fact is 'material' if a dispute over it might affect the outcome of a suit under the governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A "genuine" issue exists "if 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Id.* (quoting *Anderson*, 477 U.S. at 248).

## III.   DISCUSSION

While agreeing that their Agreement contains an arbitration clause, plaintiffs raise two disputes over enforcement of the arbitration clause. First, plaintiffs deny that the Agreement delegates gateway questions of arbitrability to an arbitrator because their instant litigation claims seek equitable relief and therefore fall outside the scope of the arbitration clause. Pls.' Mem. at 4-7; Pls.' Reply Supp. Stay Mot. at 3-5, ECF No. 12; Pls.' Suppl. at 2-5. Second, plaintiffs contend that, even if their instant litigation claims are covered by the arbitration clause, defendants waived their right to seek arbitration by asserting a lien on the aircraft, under Md. Code Ann., Com. Law § 16-202(a)(1), *see* Pls.' Mem. at 7-9, Pls.' Suppl. at 8-9, because this state statute provides that a party "may institute appropriate judicial proceedings," Md. Code Ann., Com. Law § 16-206(a)(1), if "the owner of property subject to a lien disputes any part of

the charge for which the lien is claimed," *id*.  Defendants counter that express incorporation of the JAMS rules in the Agreement's arbitration clause demonstrates that the parties agreed to have an arbitrator decide gateway claims of arbitrability, including whether plaintiffs' instant litigation claims are arbitrable or should be heard by a court.  Defs.' Suppl. at 2-4.  Regardless, defendants maintain that they have not waived their right to demand arbitration.  Defs.' Opp'n at 7.

For the reasons explained below, defendants have not waived their right to seek arbitration, and the parties' incorporation of the JAMS rules into their arbitration agreement leaves no doubt that an arbitrator must decide whether plaintiffs' claims are arbitrable, requiring that the litigation be stayed until arbitration has concluded.

### A.      Defendants Have Not Waived Their Arbitration Right.

Plaintiffs' claim that defendants waived their right to arbitration by filing a lien against the plane is considered as a threshold issue.  "[C]onsistent with arbitration's contractual basis, a party may waive its right to arbitration by acting 'inconsistently with the arbitration right.'" *Khan*, 521 F.3d at 424-45 (quoting *Nat'l Found. for Cancer Rsch. v. A.G. Edwards & Sons, Inc.*, 821 F.2d 772, 774 (D.C. Cir. 1987)); *see also Partridge v. Am. Hosp. Mgmt. Co.*, 289 F. Supp. 3d 1, 16 (D.D.C. 2017) ("Federal policy notwithstanding, a party opposing arbitration can set out defenses to arbitrability such as waiver and delay.").  While "gateway procedural issues such as 'waiver, delay, or a like defense to arbitrability' are generally for the arbitrator, not a court, to resolve," *Dist. No. 1 Pac. Coast Dist., Marine Eng'rs' Beneficial Ass'n, AFL-CIO v. Liberty Mar. Corp.*, 998 F.3d 449, 460 (D.C. Cir. 2021) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)), the specific assertion here of "waiver-through-inconsistent-conduct claims," *JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 394 (6th Cir. 2008), may be decided by a court, *see e.g.*, *Martin v. Yasuda*, 829 F.3d 1118, 1124, 1124 n.3 (9th Cir. 2016)

7

(collecting authority from the First, Third, Sixth, and Eleventh Circuits holding the same and supporting the proposition that "the reference to waiver in *Howsam* was whether a party waived arbitration by failing to comply with the arbitration forum's specific rules"); *see also Miller Legal, LLP v. Miller*, No. 18-cv-1007 (RC), 2019 WL 3253687, at *4 (D.D.C. July 19, 2019) (collecting cases holding that "federal district courts in this Circuit have found it entirely properly to assess whether a party's . . . conduct has waived [their] right to compel arbitration"). "In this circuit, the court views 'the totality of the circumstances in deciding whether the . . . party has acted inconsistently with the arbitration right," *Khan*, 521 F.3d at 425 (alterations and citation omitted), including by "active[ly] participat[ing] in a lawsuit," *id.* (citation omitted). Courts may additionally consider other factors such as "whether a party timely sought arbitration" and "whether the party opposing arbitration would suffer prejudice." *Partridge*, 289 F. Supp. 3d at 17.[2]

Here, plaintiffs do not dispute multiple facts critical to consideration of the totality of the circumstances, bolstering defendants' denial that any waiver occurred here. Those undisputed

---

[2]    Plaintiffs argue that Maryland law applies in determining whether any waiver occurred, *see* Pls.' Suppl. at 8-9, and defendants do not appear to dispute this, *see generally* Defs.' Opp'n (not addressing the issue). The law is unsettled, however, as to whether courts should look to federal or state law precedent on this issue. *See Morgan v. Sundance, Inc.*, 596 U.S. 411, 416-17 (2022) (acknowledging dispute as to whether state or federal law applies when analyzing a claim that a party waived its right to seek arbitration and assuming without deciding that federal law governed). In any event, this issue need not be resolved here because Maryland law and federal law are substantially the same. Under Maryland law, the "waiver of the contractual right to arbitrate 'may result from an express agreement or be inferred from circumstances," *Cain v. Midland Funding, LLC*, 156 A.3d 807, 815 (Md. 2017), including whether a party participated in the judicial proceedings, *see id.* (finding that defendant waived its right to arbitrate by filing collection action in small claims court), or timely made a demand for arbitration, *see Gannett Fleming, Inc. v. Corman Constr., Inc.*, 220 A.3d 411, 421 (Md. 2019) ("[A] right to arbitration may be waived if the party waits too long to assert the right to arbitration and instead 'engages itself substantially in the judicial forum.'" (citation and alteration omitted)). The federal law test "in this circuit" is substantially similar as "the court views 'the totality of the circumstances [in deciding whether] the defaulting party has acted inconsistently with the arbitration right. . . . [O]ne example of [such] conduct . . . is active participation in a lawsuit.'" *Khan v. Parsons Global Servs., Ltd.* 521 F.3d 421, 425 (D.C. Cir. 2008) (alterations in original) (quoting *Nat'l Found. for Cancer Rsch. v. A.G. Edwards & Sons, Inc.*, 821 F.2d 772, 774 (D.C. Cir. 1987)). Recent opinions in the federal district courts of Maryland confirm that any differences between its cases applying Maryland state law and federal law are "immaterial" with respect to a finding of waiver of arbitration rights. *See Roper v. Oliphant Fin., LLC*, Civil No. 23-2112-BAH, 2024 WL 4170921, at *6 n.2 (D. Md. Sept. 12, 2024) (quoting *Holloman v. Consumer Portfolio Servs., Inc.*, Civil Action No. RDB-23-134, 2023 WL 4027306, at *9 n.3 (D. Md. June 15, 2023)).

facts include that defendants timely filed a demand for arbitration and did so prior to plaintiffs instituting the present action, and that defendants have repeatedly insisted in every instance that the case should be arbitrated without engaging in any litigation conduct evidencing any intent to relinquish their arbitration rights.  Plaintiffs also do not argue that they would be prejudiced in staying litigation pending conclusion of the arbitration, since plaintiffs have already filed their bond and repossessed their aircraft.  *See* Consent Order on Bond, ECF No. 25.  Against this backdrop plaintiffs nevertheless maintain that defendants have waived their rights to arbitration by asserting a lien on plaintiffs' airplane, *see* Pls.' Mem. at 7-9, Pls.' Suppl. 8-9, because the state statute authorizing the lien also provides that the "the owner of property subject to a lien disput[ing] any part of the charge for which the lien is claimed . . . may institute appropriate judicial proceedings," Md. Code Ann., Com. Law § 16-206(a)(1).  Plaintiffs' reliance on this state law authorization is too thin a thread to support any finding that defendants waived their arbitration rights.

At the outset, plaintiffs fail to support their argument with any case law, from Maryland state courts or otherwise, where asserting a lien under a statute that merely authorizes judicial proceedings demonstrates that defendants "acted in a manner 'inconsistent with any intent to assert[] [their] right to arbitrate.'"  *Zuckerman Spaeder, LLP v. Auffenberg*, 646 F.3d 919, 922 (D.C. Cir. 2011).  To the contrary, courts have consistently found that a party's assertion of a statutory lien does not belie an intent to enforce an arbitration agreement.  *See e.g.*, *Bd. of Trs. of Metrohealth Sys. v. Eramed, LLC*, No. 9-cv-2645, 2010 WL 3239011, at *6 (N.D. Ohio Aug. 16, 2010) ("These admitted statutory liens against three of [plaintiff's] aircraft, filed by [defendant] with the FAA pursuant to [state law], do not represent action inconsistent with [defendant's] right to arbitrate."); *Hosp. Builders, Inc. v. Spokane S. Med., LLC*, No. 20-cv-1017 (CBK), 2020

9

WL 7344136, at *1-2 (D. S.D. Dec. 14, 2020) (rejecting defendant's argument that plaintiff "waived its right to arbitration" by securing a lien under state law).  In considering the interplay between filing a lien as security for amounts allegedly owed and preservation of arbitration rights, "[c]ourts find a clear distinction between the mere filing of a statutory lien and the filing of a suit to enforce the statutory lien," *Bd. of Trs. of Metrohealth Sys.*, 2010 WL 3239011 at *6, with only the latter use of judicial proceeding triggering waiver of arbitration rights, *see N. Cent. Constr., Inc. v. Siouxland Energy & Livestock Coop.*, 232 F. Supp. 2d 959, 965-66 (N.D. Iowa 2002) (holding that a party waived arbitration rights by instituting a foreclosure action in court to enforce its rights under a lien).  Here, after filing the lien, defendants demanded to enforce their rights through arbitration, not in a lawsuit to enforce the lien.

     This factual consideration, coupled with the totality of the circumstances, demonstrates that defendants have not waived their arbitration rights.  As noted, defendants have timely and repeatedly asserted their demand for arbitration.  *See* Defs.' Opp'n at 4-7; Defs.' MTD at 1; Defs.' Mem. Supp. MTD at 3-7, ECF No. 11; Defs.' Mem. Supp. Stay Mot. at 4-7, ECF No. 18-1; Defs.' Reply Supp. Stay. Mot. at 2-3, ECF No. 21; Defs.' Suppl. at 1-4.  Further, defendants have not willingly engaged in litigation activity and asserted their demand for arbitration before any litigation was commenced by plaintiffs.  In these circumstances, any finding of waiver of arbitration by defendants, as urged by plaintiffs, is simply unsupportable.  *See e.g.*, *Davis Corp. v. Interior Steel Equip. Co.*, 669 F. Supp. 32, 33 (D.D.C. 1987) (finding that defendant did not waive its arbitration rights because it "has *consistently* maintained that the dispute should be submitted to arbitration" (emphasis in original)); *Mitchell v. Craftworks Rests. & Breweries, Inc.*, No. 18-cv-879 (RC), 2018 WL 5297815, at *11 (D.D.C. Oct. 25, 2018) (finding no waiver of arbitration rights under the totality of the circumstances when defendant "did not 'substantially

10

invoke[]' the 'litigation machinery' before communicating its 'intention to arbitrate'" (alteration in original) (quoting *Partridge*, 289 F. Supp. 3d at 17)), *Quizinsight.com P'ship v. Tabak*, No. 18-cv-1878 (DLF), 2019 WL 4194433, at *4 (D.D.C. Sept. 4, 2019) (collecting cases and holding the same).

In sum, defendants filing of a statutory lien under Maryland law does not amount to conduct inconsistent with seeking enforcement of the parties' arbitration agreement and thus does not constitute a waiver of any arbitration rights.

### B. Effect of Incorporation of JAMS Rules

Applying the FAA, the Supreme Court has made clear that "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also gateway questions of arbitrability such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein*, 586 U.S. at 67-68 (citations and internal quotation marks omitted).  "[P]arties may delegate threshold arbitrability questions to the arbitrator," only if their arbitration agreement so provides by "'clear and unmistakable' evidence." *Id.* at 69 (quoting *First Options*, 514 U.S. at 944).  "[I]f a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Id.*  This is true even if a court believes the argument for arbitration is "wholly groundless." *Id.* at 68; *see also AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (holding that a court has "no business weighing the merits of the grievance" when an "agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious" (quoting *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 568 (1960))).

Courts have unanimously held that incorporation into an arbitration agreement of the JAMS rules, as well as the substantially similar American Arbitration Association ("AAA")

rules—both of which prescribe that an arbitrator decides gateway questions of arbitrability—evinces the requisite clear and unmistakable intent to have an arbitrator decide those questions. As the D.C. Circuit has explained, when the parties' agreement expressly incorporates the AAA rules for arbitration, which rules assign threshold questions of arbitrability to the arbitrator, "[u]nder our precedents, then, the parties clearly and unmistakably delegated arbitrability questions to the arbitrator by incorporating the AAA rules." *AT&T Inc.*, 6 F.4th at 1347; *see also Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 845-46 (6th Cir. 2020) (holding that incorporation of AAA rules into arbitration agreement necessitates a finding that parties unmistakably delegated gateway questions of arbitrability to an arbitrator and collecting cases from the First, Second, Third, Fifth, Eighth, Ninth, Tenth, Eleventh, and Federal Circuits reaching same conclusion); *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 481 (9th Cir. 2024) ("Incorporation of the JAMS arbitration rules by reference constitutes clear and unmistakable evidence that the parties agree to arbitrate arbitrability."); *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1283 (10th Cir. 2017) (same); *Cooper v. WestEnd Cap. Mgmt., L.L.C.*, 832 F.3d 534, 546 (5th Cir. 2016) (same); *Simply Wireless, Inc. v. T-Mobile US, Inc.*, 877 F.3d 522, 527-28 (4th Cir. 2017) (same), *abrogated on other grounds by Henry Schein*, 586 U.S. 63; *Emilio v. Sprint Spectrum L.P.*, 508 F. App'x 3, 5 (2d Cir. 2013) (same).  This conclusion is supported by the fact that every iteration of JAMS rules, no matter their formal title, provides: "Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator.  The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter."  JAMS, COMP. ARB. RULES & PROCS. Rule 11(b) (June 2021); *see also* JAMS,

STREAMLINED ARB. RULES & PROCS. Rule 8(b) (June 2021) (same); JAMS, A.I. DISPS. CLAUSE & RULES Rule 11(b) (June 2021) (same); JAMS ENG'G & CONSTR. ARB. RULES & PROCS. Rule 11(b) (June 2021) (same); JAMS ENG'G & CONSTR. ARB. RULES & PROCS. FOR EXPEDITED ARB. Rule 11(b) (June 2021) (same); JAMS, EMP. ARB. RULES & PROCS. Rule 11(b) (June 2021) (same); JAMS SURETY ADJ. RULES Rule 7(b) (Feb. 2015) (similarly worded provision); JAMS, INT'L ARB. Rules (English) Articles 4.4, 17.1-17.3 (June 2021) (similarly worded provisions).

The parties' Agreement at issue here expressly incorporates JAMS rules, stating: "The arbitration shall be conducted pursuant to the JAMS Standard Arbitration Rules." This incorporation includes the JAMS rule prescribing that an arbitrator must resolve jurisdictional and arbitrability disputes and confirms the parties' "clear and unmistakable" agreement that a JAMS arbitrator decides whether plaintiffs' claims should be heard in arbitration or in court. *See AT&T Inc.*, 6 F.4th at 1347 ("We have held that the requisite clear and unmistakable delegation occurs when the parties' agreement incorporates arbitral rules that in turn assign questions of arbitrability to the arbitrator."); *KONE Inc. v. Chenega Worldwide Support, LLC*, No. 20-cv-999 (DLF), 2021 WL 827163, at *4 (D.D.C. March 3, 2021) ("The fact that the parties incorporated the AAA rules in their entirety, rather than the specific arbitrability provision of the AAA rules does not undermine the parties' clear intent." (internal quotation marks and citation omitted)).[3]

---

[3] The parties provide no argument as to whether state or federal law guides application of the clear and unmistakable standard in particular cases, though plaintiffs generally contend that Maryland law governs this dispute, Pls.' Mem. at 5 n.3, Pls.' Suppl. at 8, without defendants addressing the issue. "Although state law governs the interpretation and formation of arbitration agreements, federal courts have split on the question of whether the 'clear and unmistakable' evidence standard presents a question of federal law or state contract law." *Kone Inc. v. Chenega Worldwide Support, LLC*, No. 20-cv-999 (DLF), 2021 WL 827163, at *4 n.3 (D.D.C. March 3, 2021) (internal citation omitted). Resolving this issue as to the proper choice of law is not necessary because the analysis and outcome would likely be the same. *See Haire v. Smith, Currie & Hancock LLP*, 925 F. Supp. 2d 126, 130-31 (D.D.C. 2013) (holding that the analysis and outcome of interpreting an arbitration agreement whether under federal, D.C., or Georgia law would likely be the same and thus not resolving which, in fact, was applicable). Specifically, Maryland courts "rely on decisions interpreting the [FAA] in reaching" decisions interpreting the Maryland Arbitration Act. *Holmes v. Coverall N. Am., Inc.*, 649 A.2d 365, 368 (Md. 1994); *see also Sunterra Corp. v. Ernst & Young LLP*, No. 24-C-02-002963, 2003 WL 23497720, at *4-6 (Md. Cir. Ct. Jan. 30, 2003) (interpreting Maryland Arbitration Act and relying on federal law for the proposition that "the question of arbitrability is

Plaintiffs offer two reasons why this clear and binding precedent should not be followed here, but neither persuades. First, plaintiffs argue that because the Agreement carves out from arbitration "injunctive relief which is expressly reserved in the applicable State or Federal Court for Washington, D.C.," Agreement § 11.7, the arbitrator's authority to decide gateway questions is likewise excepted. Pls.' Suppl. at 2-4. Plaintiffs' reliance on *Archer and White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274 (5th Cir. 2019), for this argument is misplaced, however. In *Archer and White Sales*, the Fifth Circuit, on remand from the Supreme Court, analyzed an arbitration provision that read: "Any dispute arising under or related to this Agreement (except for actions seeking injunctive relief and disputes related to trademarks, trade secrets, or other intellectual property of [defendant's subsidiary]), shall be resolved by binding arbitration in accordance with the arbitration rules of the [AAA]." 935 F.3d at 277. While incorporation of the AAA rules would ordinarily demonstrate the parties' clear intent to have an arbitrator decide questions of arbitrability, the Fifth Circuit focused on "the placement of the carve-out . . . [as] dispositive," *id.* at 281, to conclude that "[t]he plain language incorporates the AAA rules—and therefore delegates arbitrability—for all disputes *except* those under the carve-out," *id.* at 281-82.

By contrast to the single line of text the Fifth Circuit analyzed, the relevant portion of the arbitration clause of the Agreement at issue here has four separate sentences. The first sentence carves out disputes "for injunctive relief" from arbitration. *See* Agreement § 11.7 ("*Except as*

---

undeniably an issue for judicial determination, unless the parties clearly and unmistakably provide otherwise"). Likewise, federal courts in the district of Maryland apply federal law when evaluating whether parties have clearly delegated gateway questions to an arbitrator even when Maryland state law governs questions related to contract formation or interpretation. *See e.g.*, *Gray v. Schmidt Baking Co.*, No. 22-cv-00463 (LKG), 2023 WL 2185778, at *4-10 (D. Md. Feb. 23, 2023); *Jones v. Prosper Marketplace, Inc.*, No. 21-cv-893 (GJH), 2022 WL 834210, at *6-14 (D. Md. March 21, 2022); *Devine v. Bethesda Softworks, LLC*, 636 F. Supp. 3d 564, 568-73 (D. Md. Oct. 21, 2022). These courts have found that incorporation of the JAMS or AAA rules in an agreement, for which Maryland law governed issues of formation and interpretation, unmistakably evinced that the parties agreed to have an arbitrator rule on questions of arbitrability. *Gray*, 2023 WL 2185778, at *8-10; *Jones*, 2022 WL 834210, at * 9-10; *Devine*, 636 F. Supp. 3d at 571-72.

*for injunctive relief* which is expressly reserved in the applicable State or Federal Court for Washington, D.C., any controversy, or dispute arising out of this Agreement, the interpretation of any of the provisions hereof, or the action or inaction of a party hereunder shall be submitted to a confidential arbitration . . . ." (emphasis added)).  The fourth and last independent sentence incorporates JAMS rules.  *See id.* ("The arbitration shall be conducted pursuant to the JAMS Standard Arbitration Rules.").  Thus, "to the extent that [plaintiff's] arbitration agreement carves out certain claims from arbitration, it does so from the agreement in general, not from the provision that incorporates the AAA Rules."  *Blanton*, 962 F.3d at 848; *see also Brayman v. KeyPoint Gov't Sols., Inc.*, 83 F.4th 823, 834-36 (10th Cir. 2023) (finding that a provision exempting certain actions from arbitrability was distinct from the grant of authority to an arbitrator to decide threshold arbitrability questions).

The arbitration clause text at issue in this case uses language similar to that reviewed by other courts, which have rejected the argument urged by plaintiffs here to apply the carve-out to both "injunctive relief" and to the incorporation of JAMS rules, finding that this argument "conflates the *scope* of the arbitration clause, *i.e.*, which claims fall within the carve-out provision, with the question of *who* decides arbitrability."  *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1076 (9th Cir. 2013) (emphasis in original).  For example, in *Oracle*, the court analyzed a provision that read: "Any dispute arising out of or relating to this License shall be finally settled by arbitration . . ., except that either party may bring any action, in a court of competent jurisdiction . . ., with respect to any dispute relating to . . . Intellectual Property Rights."  *Id.* at 1071.  In the following sentence, the provision at issue incorporated the United Nations Commission on International Trade Law (UNCITRAL) rules, which delegate gateway arbitrability questions to an arbitrator.  *Id.*  The court explained that whether a claim relates to

15

intellectual property rights and falls within the carve-out clause, constitutes an arbitrability determination, which the parties separately delegated to the UNICITRAL arbitrator. *Id.* at 1076. The Sixth and Tenth Circuits have similarly found that parties may carve out certain actions from arbitration and still have unmistakably agreed to have an arbitrator decide whether the claim at issue falls within or outside of the carve-out clause. *Blanton*, 962 F.3d at 848 ("[T]he carveout goes to the *scope of the agreement*—a question that the agreement otherwise delegates to the arbitrator—not the *scope of the arbitrator's authority* to decide questions of 'arbitrability.'" (emphasis in original) (citation omitted)); *Brayman*, 83 F.4th at 835-836 (analyzing a similar provision as found here and holding that "[a section of the parties' agreement] gives the arbitrator and not the courts the exclusive authority to resolve disputes about the applicability of the agreement, so the arbitrator and not the courts must decide whether the [carve out for class actions] would apply to the challenged . . . Plaintiffs"); *see also Kone*, 2021 WL 827163, at *5-6 (rejecting plaintiff's argument that court should decide arbitrability under contract, which incorporated the AAA rules and carved out three types of disputes in a separate clause, because "[t]aken to its logical endpoint, conflating the issue of arbitrability with the scope of the arbitration agreement would ultimately render the AAA rules' delegation of arbitrability meaningless").

      The path here is clear. While the Agreement may carve out disputes for injunctive relief from arbitration, this does not extend to obviate an arbitrator's authority to determine whether plaintiffs' claims fall within or outside the category of actions subject to arbitration.

      Second, in a last gasp effort to avoid arbitration, plaintiffs argue that the initial capitalization of the words "Standard Arbitration Rules" undermines a finding of unmistakable evidence because this phrase is undefined in the Agreement, and "[n]one of the JAMS's . . . sets

of rules and procedures is entitled 'JAMS Standard Arbitration Rules' or 'Standard Arbitration Rules.'" Pls.' Suppl. at 6. Plaintiffs provide no case law or other legal support for the proposition that a general naming of a set of rules *ipso facto* creates ambiguity as to the parties' intent. Instead, the initial capitalization of "JAMS Standard Arbitration Rules" indicates that this organization's formal set of rules governing arbitrations applied, even if the precise title of the rules differs. As already indicated, all iterations of the JAMS rules, regardless of varying titles, delegate gateway questions of arbitrability to an arbitrator, confirming that the parties intended to have an arbitrator decide whether a dispute was arbitrable or subject to litigation in court. *See Oracle,* 724 F.3d at 1073 (holding that the parties unmistakably delegated questions of arbitrability to an arbitrator even though the parties disagreed which version of the UNCITRAL rules controlled because both versions "vest[ed] the arbitrator with the apparent authority to decide questions of arbitrability"). A contrary reading would effectively allow capitalizations or imprecise titles to render references to applicable "rules" ineffective and superfluous, in violation of basic contract law principles. *See generally* 11 WILLISTON ON CONTRACTS § 32:5 (4th ed.).[4]

Furthermore, courts have found that the incorporation of an arbitration organization's rules generally, instead of a category of specific rules, shows clear and unmistakable intent to arbitrate gateway issues of arbitrability. *See e.g.*, *AT&T Inc.*, 6 F.4th at 1346 (analyzing union-employer agreement that incorporated "the rules of the [AAA]" and then relying on the AAA's Labor Arbitration rules to find that the parties agreed to delegate gateway issues of arbitrability to an arbitrator); *Mercadante v. XE Servs., LLC*, 78 F. Supp. 3d 131, 134-35, 138-40 (D.D.C. 2015) (analyzing independent contractor agreement that incorporated "the rules of the [AAA]"

---

[4] Even if Maryland law governed contract interpretation in this case, *see supra* n.2, the analysis would be the same. Maryland "courts do not interpret contracts in a manner that would render provisions superfluous or as having no effect." *Towson Univ. v. Conte*, 862 A.2d 841, 948 (Md. 2004).

17

and then relying on the AAA's Employment Arbitration Rules and Mediation Procedures to find that the parties agreed to delegate gateway issues of arbitrability to an arbitrator); *Gray v. Schmidt Baking Co.*, No. 22-cv-00463 (LKG), 2023 WL 2185778, at * 7-8 (D. Md. Feb. 23, 2023) (finding that an agreement to conduct arbitration "in accordance with the JAMS" but that failed to incorporate or reference JAMS rules unmistakably delegated questions of arbitrability to a JAMS arbitrator because "the JAMS Rules make clear that these rules apply whenever the parties have provided 'for Arbitration by JAMS without specifying any particular JAMS Rules'" (citation omitted)).

In short, the Agreement's clear statement that "arbitration shall be conducted pursuant to the JAMS Standard Arbitration Rules," Agreement § 11.7, "clearly and unmistakably assign[ed] threshold arbitrability questions to the arbitrator," *AT&T Inc.*, 6 F.4th at 1349, and "the question [of] whether the 'particular dispute' is arbitrable is exclusively one for the arbitrator, not a court," *id.* (quoting *Henry Schein*, 586 U.S. at 68).

## IV.   CONCLUSION

For the foregoing reasons, plaintiffs' motion to stay arbitration is denied, and defendants' motion to stay litigation pending resolution of arbitration is granted.  This litigation will be stayed "until such arbitration has been had in accordance with the terms of the agreement," *see* 9 U.S.C. § 3.  The parties are directed to file a joint status report advising the Court of the status of the arbitration and its anticipated conclusion, on December 16, 2024, and every 60 days thereafter, until the conclusion of the arbitration proceeding while this case remains pending.

An order consistent with this opinion will be filed contemporaneously.

Date:  November 19, 2024

_____
**BERYL A. HOWELL**
United States District Judge